UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the COMMONWEALTH OF KENTUCKY, | ) ) ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CLEVELAND-CLIFFS STEEL CORPORATION, | ) ) | |
| | ) | |
| Defendant. | | |

## **COMPLAINT**

The United States of America, by the authority of the Attorney General, acting at the request of the Administrator of the United States Environmental Protection Agency (EPA), and the Commonwealth of Kentucky, by the authority of the Attorney General of the Commonwealth of Kentucky, acting at the request of the Commissioner of the Kentucky Department for Environmental Protection (KYDEP), by and through undersigned counsel, file this complaint and allege as follows:

## **NATURE OF THE ACTION**

1.  This is a civil action for injunctive relief and the assessment of civil penalties against Cleveland-Cliffs Steel Corporation related to a facility located at 40th Street and Winchester Avenue, in Ashland, Kentucky. The action is brought pursuant to Section 3008(a) and (g) of the Resource Conservation and Recovery Act (RCRA), as amended by the Hazardous and Solid Waste Amendments of 1984 (HSWA), 42 U.S.C. § 6928(a) and (g), and Kentucky Revised Statutes (KRS) 224.1-400-Powers of Cabinet and KRS 224.99-Penalties, for violations of KRS,

1

Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, and of the Kentucky Hazardous

Waste Regulations, codified at Title 401 of the Kentucky Administrative Regulations (K.A.R.)

Chapters 30 through 38, and 43 (2006) [Subtitle C of RCRA, 42 U.S.C. 6921-6939g, and

implementing regulations set forth at Title 40 of the Code of Federal Regulations (C.F.R.), Parts

124, and 260-273].

<u>**JURISDICTION, VENUE, AUTHORITY, AND NOTICE**</u>

2.      The United States District Court for the Eastern District of Kentucky has

jurisdiction over this action pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and 28

U.S.C. §§ 1331, 1345, 1355, and 1367.

3.      Pursuant to Section 3008(a)(1) of RCRA, 42 U.S.C. § 6928(a)(1), and 28 U.S.C.

§ 1391(b)-(c) and 1395, venue is proper in this Court because the violations asserted herein

occurred in this judicial district and because the Defendant and its predecessors conducted

business, including coking operations or coke manufacturing, at a facility located in this district.

4.      Notice of the commencement of this action has been provided to the

Commonwealth of Kentucky in accordance with RCRA Section 3008(a)(2), 42 U.S.C.

§ 6928(a)(2).

5.      Authority to bring this civil action is vested in the Attorney General of the United

States and the Administrator of EPA pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a),

and 28 U.S.C. §§ 516 and 519.

6.      Authority to bring this civil action is vested in the Energy and Environment

Cabinet pursuant to KRS 224.99 and KRS 224.46.

<u>**DEFENDANT**</u>

7.      Defendant is Cleveland-Cliffs Steel Corporation (formerly known as AK Steel

Corporation), a Delaware corporation licensed to do business in Kentucky and headquartered in West Chester, Ohio. Cleveland-Cliffs Inc. acquired AK Steel Holding Corporation in March 2020, making AK Steel Corporation a wholly-owned subsidiary of Cleveland-Cliffs Inc.   In April 2021, AK Steel Corporation changed its name to Cleveland-Cliffs Steel Corporation, which remains a wholly-owned subsidiary of Cleveland-Cliffs Inc.

## STATUTORY AND REGULATORY BACKGROUND

8.      RCRA, enacted in 1976, amended the Solid Waste Disposal Act of 1965. Subtitle C of RCRA, 42 U.S.C. §§ 6921-6939f, authorizes the "cradle-to-grave" regulation of hazardous waste. RCRA was amended in 1984 by HSWA, Pub. L. No. 98-616, 98 Stat. 3221, which added additional requirements. Pursuant to its authority under RCRA, EPA has promulgated regulations at 40 C.F.R. Parts 124, 260-270, and 273, applicable to hazardous waste generators, transporters, and owners and operators of treatment, storage, and disposal facilities.

9.      Section 3006 of RCRA, 42 U.S.C. § 6926, provides that a state may obtain federal authorization to administer the RCRA hazardous waste management program in that state. Pursuant to Section 3006(b) of RCRA, 42 U.S.C. § 6926(b), the Commonwealth of Kentucky has received final authorization to administer a hazardous waste management program in lieu of the federal program set forth in RCRA. The requirements of Kentucky's authorized hazardous waste management program are found in KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste and in 401 K.A.R., Chapters 30 through 38, and 43 (2006).[1]

10.     Although EPA has granted Kentucky the authority to enforce its own hazardous waste management program, EPA retains jurisdiction and authority to initiate a federal

---

[1] At the time of the violations alleged in this complaint, the last EPA authorized version of the Kentucky hazardous waste regulations was the 2006 version. As a result, this complaint cites to the 2006 version of Kentucky's hazardous waste regulations, as opposed to the most current version of Kentucky's hazardous waste regulations, which are contained in Title 401, Chapter 39, of the Kentucky Administrative Regulations.

enforcement action pursuant to Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2), to address violations of the requirements of the authorized state program, upon notification to the Commonwealth of Kentucky. EPA exercises this authority in the manner set forth in the Memorandum of Agreement between EPA and the Commonwealth of Kentucky. Kentucky is a co-plaintiff.

11.     As Kentucky's authorized hazardous waste management program operates in lieu of the federal RCRA program, the citations for the violations alleged herein will be to the 2006 authorized Kentucky program. For ease of reference, the analogous federal citations will follow in brackets.

12.     Pursuant to KRS § 224.46-520(1) and 401 K.A.R. 38:010 Section 1(2) (2006) [RCRA § 3005(a) and (e), 42 U.S.C. § 6925(a) and (e), and 40 C.F.R. § 270.1(c)], persons owning or operating a facility that treats, stores, or disposes of hazardous waste are required to have a permit or interim status and are subject to the hazardous waste management requirements specified in 401 K.A.R. Chapters 34 (permitted) and 35 (interim status) (2006) [40 C.F.R. Parts 264 (permitted) and 265 (interim status)].

13.     Pursuant to KRS § 224.46-510(1) [Section 3002 of RCRA, 42 U.S.C. § 6922] and the implementing regulations found at 401 K.A.R. Chapter 32 (2006) [40 C.F.R. Part 262], generators of hazardous waste are subject to various requirements depending on the amount of hazardous waste they generate on a monthly basis.

14.     A generator who generates more than 1,000 kilograms of hazardous waste in a calendar month is a large quantity generator (LQG). *See* 401 K.A.R. 32:030 Section 5(1) (2006) [40 C.F.R. § 262.34(b)[2]].

---

[2] The provisions of 40 C.F.R. § 262.34 were divided into three new sections (262.15, 262.16, and 262.17) by the

4

15.      A LQG may accumulate more than 1,000 kilograms of hazardous waste in a calendar month and store the waste on-site for ninety (90) days or less without obtaining a permit or interim status, provided the generator complies with the conditions for exemption outlined in 401 K.A.R. 32:030 Section 5(1) (2006) [40 C.F.R. § 262.34(a)] (hereinafter, "LQG Permit Exemption").

16.      The term "person" is defined as an individual, trust, firm, joint stock company, corporation (including government corporation), partnership, association, federal agency, state agency, city, commission, political subdivision of Kentucky or any interstate body. 401 K.A.R. 30:005 Section 1(22) (2006) [40 C.F.R. § 260.10], which references KRS § 224.01-010(17).

17.      The term "owner" is defined as the person who owns an on-site or off-site waste facility or any part of a facility. 401 K.A.R. 30:005 Section 1(20) (2006) [40 C.F.R. § 260.10].

18.      The term "operator" is defined as the person responsible for the overall operation of an on-site or off-site waste facility. 401 K.A.R. 30:005 Section 1(19) (2006) [40 C.F.R. § 260.10].

19.      The term "facility" is defined as "[a]ll contiguous land, and structures, other appurtenances, and improvements on the land, used for treating, storing, or disposing of hazardous waste." 401 K.A.R. 31:005 Section 1(93)(a) (2006) [40 C.F.R. § 260.10].

20.      The term "generator" is defined as "any person, by site, whose act or process produces waste." 401 K.A.R. 32:005 Section 1(111) (2006), [40 C.F.R. § 260.10], referencing KRS § 224.01-010(13).

21.      The term "waste" is defined as including "any discarded material that is not

Generator Improvements Rule (81 Fed. Reg. 85732, Nov. 28, 2016) and Section 262.34 has now been removed and reserved. However, because Section 262.34 was in effect at the time of the violations alleged in this complaint, this complaint cites to Section 262.34, as appropriate.

5

excluded" under 401 K.A.R. 31:010 Section 4(1) (2006) [40 C.F.R. § 261.4(a)] by a variance

granted under 401 K.A.R. 30:080 Sections 1 or 2 (2006) [40 C.F.R. §§ 260.30 and 260.31], or by

401 K.A.R. 31:010 Sections 8 and 9 (2006). *See* 401 K.A.R. 31:010 Section 2(1)(a) (2006) [40

C.F.R. § 261.2(a)(1)].

22.     The term "discarded material" is defined as, *inter alia*, any material, which is

"abandoned," which includes any material that is "accumulated, stored, or treated (but not

recycled) before or in lieu of being abandoned by being disposed of, burned, or incinerated." 401

K.A.R. 31:010 Section 2(1)(b) and 2(2) (2006) [40 C.F.R. § 261.2(a)(2) and (b)].

23.     Pursuant to 401 K.A.R. 31:010 Section 3 (2006) [40 C.F.R. § 261.3], a "waste" is a

"hazardous waste" if it is not excluded from the definition of hazardous waste by 401 K.A.R.

31:010 Section 4(2) (2006) [40 C.F.R. § 261.4(b)], and it meets any of the criteria listed in 401

K.A.R. 31:010 Section 3(b) [40 C.F.R. § 261.3(a)(2)], including the criteria for exhibiting a

hazardous waste characteristic identified in 401 K.A.R. 31:030 (2006) [40 C.F.R. §§ 261.21-24],

or for being a listed waste identified in 401 K.A.R. 31:040 (2006) [40 C.F.R. Part 261, Subpart

D].

24.     Pursuant to 401 K.A.R. 31:010 Section 4(1)(j) (2006) [40 C.F.R. § 261.4(a)(10)],

materials with the waste codes K060, K087, K141, K142, K143, K144, K145, K147, and K148

are not "wastes" when, subsequent to generation, these materials are recycled to coke ovens, to

the tar recovery process as a feed stock to produce coal tar, or are mixed with coal tar prior to the

tar's sale or refining. This exclusion is conditioned on there being no land disposal of the wastes

from the point they are generated to the point they are recycled to coke ovens or tar recovery or

refining processes, or mixed with coal tar. 401 K.A.R. 31:010 Section 4(1)(j) (2006) [40 C.F.R. §

261.4(a)(10)].

25.     The term "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any waste into or on any land or water so that such waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." KRS § 224.01-010(10) [40 C.F.R. § 260.10].

26.     The term "land disposal" includes but is not limited to "any placement of hazardous waste in a landfill, surface impoundment, waste pile, injection well, land treatment facility, salt dome formation, salt bed formation, or underground mine or cave." 401 K.A.R. 31:005 Section 1(155) (2006) and 401 K.A.R. 37:005 Section 1(155) (2006), incorporating the definition specified in KRS § 224.01-010(43) [40 C.F.R. § 268.2(c)].

27.     Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), provides that EPA may bring a civil action for injunctive relief and/or penalties whenever the Administrator determines that a person has violated or is in violation of any requirement of Subtitle C of RCRA. KRS § 224.99-010(5) provides that KYDEP may commence a civil action for injunctive relief and/or penalties whenever any person engages in the generation, treatment, storage, or disposal of hazardous waste in violation of the Kentucky hazardous waste management provisions in KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste.

28.     Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), and its implementing regulations, any person who violates a requirement of Subtitle C shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 per violation for each violation occurring after January 12, 2009 through November 2, 2015, and not to exceed $76,764 per violation for each violation occurring after November 2, 2015, where penalties are assessed on or after December 23, 2020. In addition, pursuant to KRS § 224.99-010(5), any person who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, shall be liable

7

to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed the sum of $25,000 for each day during which the violation continues.

## GENERAL ALLEGATIONS

29.     Defendant is a corporation and, therefore, a "person" within the meaning of 401 K.A.R. 30:005 Section 1(22) (2006) [40 C.F.R. § 260.10].

30.     At all times relevant to this action, Defendant was the "owner" and "operator" of a "facility," known as the AK Steel Ashland Coke Plant (the Facility) located at 40th Street and Winchester Avenue, Ashland, Kentucky 41101, as those terms are defined in 401 K.A.R. 30:005 Section 1(19), (20), and 93(a) (2006) [40 C.F.R. § 260.10].

31.     Beginning in 1920, and until the Facility ceased production in June of 2011, the Defendant and its predecessors manufactured furnace coke at the Facility by heating coal in an oxygen-deficient distillation process using coke ovens.

32.     At all times relevant to this action, Defendant was an LQG of hazardous waste.

33.     While in operation, Defendant generated a number of hazardous wastes, including, but not limited to: wastes exhibiting the characteristics of toxicity for arsenic (D004), barium (D005), cadmium (D006), benzene (D018), chromium (D007), and pyridine (D038); and listed wastes associated with its coking operations, including decanter tank tar sludge from coking operations (K087) and process residues from the recovery of coal tar (K141). After the Facility closed in June of 2011, Defendant also generated residues from process cleaning and closure activities, including coking wastes that included wastes carrying one or more of the following listed waste codes: K141, K142, K143, K144, K145, K147, and K148 (herein after "K-listed Coking Residues").

34.     As part of its operations at the Facility, Defendant conducted a recycling process

8

that involved removing the decanter tank tar sludge from the tar sludge decanter area and transferring it to an in-ground concrete containment area/impoundment and adjacent concrete pad where it was stored, mixed and then re-introduced into the coke ovens as a feedstock material. The concrete pad was attached to the impoundment and surrounded by a concrete berm that is roughly eight inches wide by one foot high.

35.     The in-ground containment area was constructed prior to 1980 and is a solid concrete impoundment. The top of the concrete impoundment is at ground level. Since the 1980s, the perimeter of the impoundment has been built-up raising the height to approximately three to four feet above ground level with concrete cinder block. Gravel rock was also added around the base of the impoundment to provide additional structural support and traction for vehicles driving around the area. Sometime after June of 2010, Defendant added plywood sheets on top of the concrete cinder blocks, further raising the height of the perimeter wall of the impoundment.

36.     While the Facility was in operation, Defendant used the impoundment primarily to store decanter tank tar sludge (K087). After the Facility closed in June of 2011, Defendant also used the Swimming Pool to store K-listed Coking Residues (K141, K142, K143, K144, K145, K147, and K148).

37.     Between June 22, 2010 and June 25, 2010, EPA, including the EPA National Enforcement Investigations Center (NEIC), and KYDEP conducted a multi-media compliance evaluation inspection of the Facility (2010 NEIC Inspection) during which inspectors observed a number of violations of RCRA and Kentucky's authorized hazardous waste management program.

38.     Between December 6, 2011 and December 8, 2011, EPA and KYDEP conducted a

follow-up inspection that included site sampling by EPA Region 4's Science and Ecosystem

Support Division (the 2011 Inspection), during which inspectors observed additional violations

of RCRA and Kentucky's authorized hazardous waste management program.

39.         KYDEP independently conducted several inspections and follow-up inspections,

which took place on November 17, 2010; February 23, 2011; June 15, 2011; and May 9, 2012

(the "KYDEP Inspections"), and during which inspectors observed additional violations of

RCRA and Kentucky's authorized hazardous waste management program.

40.         The violations observed during the 2010 NEIC Inspection, the 2011 Inspection,

and the KYDEP Inspections are set forth below and are the basis of this complaint.

41.          Pursuant to a RCRA 3013 Order issued by EPA to AK Steel Corporation on

September 26, 2012, Docket No. RCRA-04-2012-4252, AK Steel conducted two phases of

sampling and site investigation at the Facility.

42.          Sampling done during inspections at the Facility revealed the presence of a

number of hazardous constituents at the Facility, including, but not limited to:

benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, dibenzo(a,h)anthracene,

indeno(1,2,3-cd)pyrene, arsenic, barium, chromium, copper, cadmium, lead, and benzene. The

sampling also revealed that the soils contained a number of hazardous constituents expected to

be found in, but not necessarily from a release of, the following listed hazardous wastes: K141,

K142, K143, K144, K145, K147, K148, and K087.

## **FIRST CLAIM FOR RELIEF**

Failure to Make a Hazardous Waste Determination on Solid Wastes Generated at the Facility

43.         Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

44.         Pursuant to 401 K.A.R. 32:010 Section 2 (2006) [40 C.F.R. § 262.11], a person

who generates a waste must, at the time the waste is generated, determine if that waste is a hazardous waste using the prescribed method, which can involve either analytically testing the waste or applying process knowledge.

45.     At the time of the 2011 Inspection, Defendant had generated and was storing the following materials at the Facility: one container of lacquer thinner inside a metal locker that was deteriorating on the ground; two 6-foot piles of used oven bricks; and at least two hundred containers of chemicals in the Facility's laboratory.

46.     The materials described in Paragraph 45 were "wastes" within the meaning of 401 K.A.R. 32:010 Section 2(1)(a) (2006) [40 C.F.R. § 261.2(a)(1)] because Defendant was accumulating or storing them before or in lieu of disposing of them.

47.     At the time of the 2011 Inspection, Defendant had not made a hazardous waste determination on any of the wastes described in Paragraph 45.

48.     By failing to make a hazardous waste determination on the wastes described in Paragraph 45 at the time they were generated, Defendant violated 401 K.A.R. 32:010 Section 2 (2006) [40 C.F.R. § 262.11].

49.     Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note); amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 per violation per day for each violation occurring after January 12, 2009 through November 2, 2015. In addition, pursuant to KRS § 224.99-010(5), any person

who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed the sum of $25,000 for each day during which the violation continues.

## SECOND CLAIM FOR RELIEF

Disposing of Hazardous Waste and Operating a Hazardous Waste Management Unit Without a Permit

50.     Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

51.     Pursuant to KRS § 224.46-520(1) [RCRA § 3005(a) and (e), 42 U.S.C. § 6925(a) and (e)], a facility that treats, stores, or disposes of hazardous waste is required to have a permit or interim status.

52.     Pursuant to 401 K.A.R. 38:010 Section 1(2) (2006) [40 C.F.R. § 270.1(c)], "[o]wners or operators of hazardous waste management units shall have permits during the active life (including the closure period) of the unit."

53.     A "hazardous waste management unit" is defined as a "contiguous area of land on or in which hazardous waste is placed, or the largest area in which there is significant likelihood of mixing hazardous waste constituents in the same area" and examples of hazardous waste management units include, *inter alia*, surface impoundments and tanks. 401 K.A.R. 38:005 Section 1(121) (2006) [40 C.F.R. § 260.10].

54.     During the 2010 NEIC Inspection, inspectors observed decanter tar tank sludge (K087 waste) leaking from cracks in the concrete impoundment walls onto the surrounding soil, including an area of contaminated soil that appeared to be approximately thirty feet in length along the southern wall and two feet in width from the base of the wall. Defendant subsequently excavated this area, removing a total of 41,760 pounds of contaminated soil between July 6, 2010 and July 28, 2010, and shipped the contaminated soil as hazardous waste for off-site

12

disposal.

55.     During the December 2011 inspection, inspectors observed decanter tank tar sludge (K087 waste) and/or K-listed Coking Residues (K141, K142, K143, K144, K145, K147, and K148 wastes) leaking from the concrete impoundment onto the surrounding soils.

56.     During the December 2011 inspection, inspectors observed dark staining of soil from decanter tank tar sludge (K087 waste) and/or K-listed Coking Residues (K141, K142, K143, K144, K145, K147, and K148 wastes) that had splashed out of the concrete impoundment and off of the concrete pad onto the surrounding soil.

57.     Defendant used a hose to inject steam into material stored in the concrete impoundment. At the time of the December 2011 inspection, residual material including decanter tank tar sludge (K087 waste) and/or K-listed Coking Residues (K141, K142, K143, K144, K145, K147, and K148 wastes) was leaking from this hose onto the ground outside the concrete impoundment.

58.     At the time of the May 9, 2012 KYDEP Inspection, decanter tank tar sludge (K087) was visibly leaking from the concrete impoundment onto the surrounding soils.

59.     The releases of decanter tank tar sludge (K087) and/or K-listed Coking Residues (K141, K142, K143, K144, K145, K147, and K148) onto the soils surrounding the concrete impoundment and concrete pad described in Paragraphs 55-58 constitute land disposal of a hazardous waste.

60.     In addition, the impoundment and concrete pad and surrounding areas described in Paragraphs 55-58 constitute a hazardous waste management unit within the meaning of 401 K.A.R. 38:005 Section 1(121) (2006) [40 C.F.R. § 260.10].

61.     Defendant, therefore, disposed of hazardous waste and operated a hazardous waste

13

management unit without a permit or interim status in violation of KRS § 224.46-520(1) [RCRA § 3005(a) and (e), 42 U.S.C. § 6925(a) and (e)] and 401 K.A.R. 38:010 Section 1(2) (2006) [40 C.F.R. § 270.1(c)].

62.         Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note); amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 per violation per day for each violation occurring after January 12, 2009 through November 2, 2015; and not to exceed $81,540 per day for each violation that occurred after November 2, 2015, where penalties are assessed on or after January 12, 2022. In addition, pursuant to KRS § 224.99-010(5), any person who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed the sum of $25,000 for each day during which the violation continues. With respect to this claim, the United States and the Commonwealth of Kentucky are also seeking appropriate injunctive relief to ensure that the contamination at the facility caused by the disposal of hazardous waste does not pose a threat to public health and the environment.

### THIRD CLAIM FOR RELIEF

Land Disposal of a Listed Hazardous Waste Without Determining if the Waste Is Restricted From Land Disposal

63.         Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

64.         Pursuant to 401 K.A.R. 37:030 (2006) [40 C.F.R. § 268.40(a)], a prohibited waste

14

may only be land disposed if it meets the applicable land disposal restriction standards in 401 K.A.R. 37:040 (2006) [40 C.F.R. § 268.40].

65.        Pursuant to 401 K.A.R. 37:010 Section 7(1) (2006) [40 C.F.R. § 268.7(a)(1)], if a generator's hazardous waste is listed in 401 K.A.R. 31:040 (2006) [40 C.F.R. Part 261 Subpart D], the generator shall test his waste or an extract of the waste using the Toxicity Characteristic Leaching Procedure (TCLP) or use knowledge of the waste to determine if the waste is restricted from land disposal under 401 K.A.R. Chapter 37 (2006) [40 C.F.R. Part 268].

66.        Defendant generated hazardous wastes listed in 401 K.A.R. 31:040 (2006) [40 C.F.R. Part 261 Subpart D], including decanter tank tar sludge (K087) and K-listed Coking Residues (K141, K142, K143, K144, K145, K147, and K148).

67.        At the time of the 2010 NEIC Inspection, the 2011 Inspection, and the May 9, 2012 KYDEP inspection, Defendant had disposed of the listed hazardous wastes described in Paragraph 66 onto the soil surrounding the impoundment and the concrete pad.

68.        Defendant did not test the listed hazardous wastes described in Paragraph 66 using TCLP or knowledge of the waste to determine if the waste needed to be treated prior to land disposal.

69.        By failing to test listed hazardous waste prior to disposing of it, Defendant violated 401 K.A.R. 37:010 Section 7(1) (2006) [40 C.F.R. § 268.7(a)(1)].

70.        Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note); amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31,

1996); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in

an amount not to exceed $37,500 per violation per day for each violation occurring after January

12, 2009 through November 2, 2015.   In addition, pursuant to KRS § 224.99-010(5), any person

who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste,

shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed

the sum of $25,000 for each day during which the violation continues.

## FOURTH CLAIM FOR RELIEF

Operating a Hazardous Waste Storage Facility Without a Permit or Interim Status by Failing to
Maintain a Facility to Minimize the Possibility of a Release of Hazardous Waste or Hazardous
Waste Constituents to the Environment

71.      Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

72.      Pursuant to 401 K.A.R. 32:030 Section 5(1)(d) (2006) [40 C.F.R. § 262.34(a)(4)],

which incorporates 401 K.A.R. 35:030 Section 2 (2006) [40 C.F.R. § 265.31], and is a condition

of the LQG Permit Exemption, an owner or operator must maintain and operate its facility in a

manner that minimizes the possibility of a fire, explosion, or any unplanned or sudden or

nonsudden release of hazardous waste or hazardous waste constituents to air, soil, or surface

water which could threaten human health or the environment.

73.      At the time of the 2010 NEIC Inspection, the 2011 Inspection, and the KYDEP

Inspections, decanter tank tar sludge (K087) was visibly leaking from the walls of the concrete

impoundment.

74.      At the time of the 2010 NEIC Inspection, the 2011 Inspection, and the May 9,

2012 KYDEP inspection, Defendant had disposed of the listed hazardous wastes described in

Paragraphs 55-58 onto the soil surrounding the impoundment and the concrete pad.

75.      At the time of the 2011 Inspection, dark colored soil was visible in an area

immediately adjacent and west of Defendant's above-ground storm water tanks. Soil samples of this area tested positive for hazardous waste constituents, including polycyclic aromatic hydrocarbons (PAHs) and arsenic.

76.     By allowing the releases of hazardous waste and hazardous waste constituents described in Paragraphs 73-75 to occur, Defendant failed to maintain and operate the Facility in a manner that minimized the possibility of a fire, explosion, or any unplanned or sudden or non-sudden release of hazardous waste or hazardous waste constituents as required by 401 K.A.R. 35:030 Section 2 (2006) [40 C.F.R. § 265.31].

77.     By failing to operate the facility in a manner required by 401 K.A.R. 35:030 Section 2 (2006) [40 C.F.R. § 265.31], Defendant failed to meet a condition of the LQG Permit Exemption set forth in 401 K.A.R. 32:030 Section 5(1)(d) (2006) [40 C.F.R. § 262.34(a)(4)], and was, therefore, storing hazardous waste without a permit or interim status in violation of KRS § 224.46-520(1) [RCRA § 3005(a) and (e), 42 U.S.C. § 6925(a) and (e)].

78.     Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note); amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 per violation per day for each violation occurring after January 12, 2009 through November 2, 2015.   In addition, pursuant to KRS § 224.99-010(5), any person who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed

17

the sum of $25,000 for each day during which the violation continues. With respect to this claim, the United States and the Commonwealth of Kentucky are also seeking appropriate injunctive relief to ensure that the contamination at the facility caused by the disposal of hazardous waste does not pose a threat to public health and the environment.

## FIFTH CLAIM FOR RELIEF

<u>Operating a Hazardous Waste Storage Facility Without a Permit or Interim Status by Failing to Provide Secondary Containment for a Hazardous Waste Tank System and Failing to Provide an External Liner for a Hazardous Waste Tank System</u>

79.     Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

80.     Pursuant to 401 K.A.R. 32:030 Section 5(1)(a)2. (2006) [40 C.F.R. § 262.34(a)(1)(ii)], which incorporates 401 K.A.R. 35:190 Section 4 (2006) [40 C.F.R. § 265.193], and is a condition of the LQG Permit Exemption, a generator who accumulates hazardous waste in tank systems must comply with the requirements for secondary containment.

81.     Pursuant to 401 K.A.R. 35:190 Section 4(2) (2006) [40 C.F.R. § 265.193(b)], secondary containment for tank systems must be: (a) designed, installed, and operated, to prevent any migration of wastes or accumulated liquid out of the system to the soil, groundwater, or surface water at any time during the use of the tank system; and (b) capable of detecting and collecting releases and accumulated liquids until the collected material is removed.

82.     Pursuant to 401 K.A.R. 35:190 Section 4(4) (2006) [40 C.F.R. § 265.193(d)], secondary containment must include one or more of the following devices: (1) a liner (external to the tank); (2) a vault; (3) a double-walled tank; or (4) an equivalent approved device.

83.     If an external liner is used, it must satisfy the requirements in 401 K.A.R. 35:190 Section 4(5)(a) (2006) [40 C.F.R. § 265.193(e)(1)(iii)], which include, *inter alia*, that the liner be free of cracks or gaps.

18

84.     The term "tank" is defined as "a stationary device, designed to contain an accumulation of hazardous waste that is constructed primarily of non-earthen materials (for example, wood, concrete, steel, or plastic) which provide structural support and which does not meet the definition of any other unit." 401 K.A.R. 35:005 Section 1(273) (2006) [40 C.F.R. § 260.10].

85.     A "sump" is "any pit or reservoir that meets the definition of tank, and those troughs and trenches connected to it, that serves to collect hazardous waste for transport to hazardous waste storage, treatment, or disposal facilities." K.A.R. 35:005 Section 1(269) (2006) [40 C.F.R. § 260.10].

86.     The term "tank system" is defined as "a hazardous waste storage or treatment tank and its associated ancillary equipment and containment system." See K.A.R. 35:005 Section 1(274) (2006) [40 C.F.R. § 260.10].

87.     While the Facility was in operation, Defendant stored its monoethanolamine (MEA) waste in a 6,000 gallon above-ground tank called the "MEA Waste Tank" and in a 7,500 gallon in-ground sump constructed of concrete, called the "Sulfiban Sump."

88.     The MEA Waste Tank and Sulfiban Sump are tanks as that term is defined in 401 K.A.R. 35:005 Section 1(273) (2006) [40 C.F.R. § 260.10].

89.     Defendant's MEA waste is a hazardous waste because it exhibits the characteristic of toxicity for chromium (D007) and pyridine (D038).

90.     At the time of the 2010 NEIC Inspection, Defendant was not actively managing the Sulfiban Sump as a RCRA regulated tank and had not provided it with any secondary containment.

91.     At the time of the 2010 NEIC Inspection, Defendant was using an external liner to

provide secondary containment for the MEA Waste Tank; however, the liner was cracked, had gaps, and was not coated with an impervious coating.

92.     By failing to provide any secondary containment for the Sulfiban Sump and an intact external liner free of cracks and gaps for the MEA Waste Tank, Defendant was out of compliance with the secondary containment requirements of 401 K.A.R. 35:190 Section 4 (2006) [40 C.F.R. § 265.193].

93.     By failing to meet the secondary containment requirements of 401 K.A.R. 35:190 Section 4 (2006) [40 C.F.R. § 265.193], Defendant failed to meet a condition of the LQG Permit Exemption set forth in 401 K.A.R. 32:030 Section 5(1)(a)2 (2006) [40 C.F.R. § 262.34(a)(1)(ii)], and was, therefore, storing hazardous waste without a permit or interim status in violation of KRS § 224.46-520(1) [RCRA § 3005(a) and (e), 42 U.S.C. § 6925(a) and (e)].

94.     Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note); amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 per violation per day for each violation occurring after January 12, 2009 through November 2, 2015. In addition, pursuant to KRS § 224.99-010(5), any person who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed the sum of $25,000 for each day during which the violation continues.

## SIXTH CLAIM FOR RELIEF

Operating a Hazardous Waste Storage Facility Without a Permit or Interim Status by Failing to
Use Appropriate Controls and Practices to Prevent Spills and Overflows from a Tank

95.     Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

96.     Pursuant to 401 K.A.R. 32:030 Section 5(1)(a)2 (2006) [40 C.F.R. §
262.34(a)(1)(ii)], which incorporates 401 K.A.R. 35:190 Section 5(2) (2006) [40 C.F.R. §
265.194(b)], and is a condition of the LQG Permit Exemption, a generator accumulating
hazardous waste in tanks must use appropriate controls and practices to prevent spills and
overflows from tank or secondary containment systems that at a minimum include: (a) spill
prevention controls (e.g., check valves or dry discount couplings); (b) overfill prevention
controls (e.g., level sensing devices, high level alarms, automatic feed cutoff, or bypass to a
standby tank); and (c) maintenance of sufficient freeboard in uncovered tanks to prevent
overtopping by wave or wind action or by precipitation.

97.     At the time of the 2010 NEIC Inspection, Defendant had not equipped the MEA
Waste Tank or the Sulfban Sump with spill or overfill prevention equipment and, according to
the Facility's standard operating procedure, was not following appropriate practices to ensure that
the MEA Waste Tank always had enough space so as to prevent spills or overflows of MEA
waste from the tank, and was, therefore, out of compliance with the spill and overfill prevention
requirements in 401 K.A.R. 35:190 Section 5(2) (2006) [40 C.F.R. § 265.194(b)].

98.     By failing to comply with the spill and overfill prevention requirements in 401
K.A.R. 35:190 Section 5(2) (2006) [40 C.F.R. § 265.194(b)], Defendant failed to meet a
condition of the LQG Permit Exemption set forth in 401 K.A.R. 32:030 Section 5(1)(a)2 (2006)
[40 C.F.R. § 262.34(a)(1)(ii)], and was, therefore, storing hazardous waste without a permit or
interim status in violation of KRS § 224.46-520(1) [RCRA § 3005(a) and (e), 42 U.S.C. §

21

6925(a) and (e)].

99.       Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil

Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended

by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note);

amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015,

Pub. L. No. 114-74, 129 Stat. 599 (2015) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31,

1996); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in

an amount not to exceed $37,500 per violation per day for each violation occurring after January

12, 2009 through November 2, 2015. In addition, pursuant to KRS § 224.99-010(5), any person

who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste,

shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed

the sum of $25,000 for each day during which the violation continues.

## SEVENTH CLAIM FOR RELIEF

### Operating a Hazardous Waste Storage Facility Without a Permit or Interim Status by Failing to Conduct Daily Inspections of a Hazardous Waste Tank System

100.      Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

101.      Pursuant to 401 K.A.R. 32:030 Section 5(1)(a)2 (2006) [40 C.F.R. §

262.34(a)(1)(ii)], which incorporates 401 K.A.R. 35:190 Section 6(1) (2006) [40 C.F.R. §

265.195(a) and (b)], and is a condition of the LQG Permit Exemption, a generator storing

hazardous waste in a tank system must inspect the following, at least once each operating day:

overfill and spill control equipment to ensure it is in good working order; above-ground portions

of the tank system, if any, to detect corrosion; data gathered from monitoring equipment and

leak-detection equipment to ensure that the tank system is being operated according to its design;

and construction materials and the area immediately surrounding the externally accessible

portion of the tank system, including the secondary containment system, to detect erosion or signs of releases of hazardous wastes (such as wet spots or dead vegetation).

102.    At the time of the 2010 NEIC Inspection, Defendant was not managing the Sulfiban Sump as a hazardous waste tank and was not conducting daily inspections in accordance with 401 K.A.R. 35:190 Section 6(1) (2006) [40 C.F.R. § 265.195(a) and (b)].

103.    By failing to comply with the inspection requirements in 401 K.A.R. 35:190 Section 6(1) (2006) [40 C.F.R. § 265.195(a) and (b)], Defendant failed to meet a condition of the LQG Permit Exemption set forth in 401 K.A.R. 32:030 Section 5(1)(a)2 (2006) [40 C.F.R. § 262.34(a)(1)(ii)], and was, therefore, storing hazardous waste without a permit or interim status in violation of KRS § 224.46-520(1) [RCRA § 3005(a) and (e), 42 U.S.C. § 6925(a) and (e)].

104.    Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note); 85 Fed. Reg. 1751 (Jan. 13, 2020); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 per violation per day for each violation occurring after January 12, 2009 through November 2, 2015. In addition, pursuant to KRS § 224.99-010(5), any person who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed the sum of $25,000 for each day during which the violation continues.

## EIGHTH CLAIM FOR RELIEF

Operating a Hazardous Waste Storage Facility Without a Permit or Interim Status by Failing to Mark a Tank with the Words "Hazardous Waste"

105.    Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

23

106.     Pursuant to 401 K.A.R. 32:030 Section 5(1)(c) (2006) [40 C.F.R. § 262.34(a)(3)], which is a condition of the LQG Permit Exemption, a generator is required to label or clearly mark each tank that is accumulating hazardous waste on-site with the words "Hazardous Waste."

107.     At the time of the 2010 NEIC Inspection, Defendant was accumulating hazardous waste in the Sulfban Sump but had not labeled or clearly marked the Sulfiban Sump with the words "Hazardous Waste."

108.     By failing to label the Sulfiban Sump, Defendant failed to meet a condition of the LQG Permit Exemption set forth in 401 K.A.R. 32:030 Section 5(1)(c) (2006) [40 C.F.R. § 262.34(a)(3)], and was, therefore, storing hazardous waste without a permit or interim status in violation of KRS § 224.46-520(1) [RCRA § 3005(a) and (e), 42 U.S.C. § 6925(a) and (e)].

109.     Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note); amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 per violation per day for each violation occurring after January 12, 2009 through November 2, 2015. In addition, pursuant to KRS § 224.99-010(5), any person who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed the sum of $25,000 for each day during which the violation continues.

## NINTH CLAIM FOR RELIEF

Operating a Hazardous Waste Storage Facility Without a Permit or Interim Status by Failing to
Amend the Facility's Contingency Plan

110.     Paragraphs 1 through 43 are realleged herein and incorporated herein by reference.

111.     Pursuant to 401 K.A.R. 32:030 Section 5(1)(d) (2006) [40 C.F.R. § 262.34(a)(4)],
which incorporates K.A.R. 35:040 Section 5 (2006) [40 C.F.R. § 265.54], and is a condition of
the LQG Permit Exemption, the owner or operator of a facility must review and amend its
contingency plan whenever, *inter alia*, (1) the facility changes (in its design, construction,
operation, maintenance, or other circumstances) in a way that materially increases the potential
for fires, explosions, or releases of hazardous waste or hazardous waste constituents, or changes
the response necessary in an emergency; or (2) the list of emergency coordinators changes.

112.     At the time of the December 2011 Inspection, Defendant had not updated its
contingency plan to reflect Facility changes that had taken place since Defendant began closing
down its operations, including changes in the hazardous waste streams it was generating and
contact information for emergency coordinators. Defendant did not amend its contingency plan
to reflect these changes until May 2012.

113.     By failing to comply with the contingency plan requirements in K.A.R. 35:040
Section 5 (2006) [40 C.F.R. § 265.54], Defendant failed to meet a condition of the LQG Permit
Exemption set forth in 401 K.A.R. 32:030 Section 5(1)(d) (2006) [40 C.F.R. § 262.34(a)(4)], and
was, therefore, storing hazardous waste without a permit or interim status in violation of KRS §
224.46-520(1) [RCRA § 3005(a) and (e), 42 U.S.C. § 6925(a) and (e)].

114.     Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g); the Federal Civil
Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended
by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note);

amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 40 C.F.R. § 19.4, Defendant shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 per violation per day for each violation occurring after January 12, 2009 through November 2, 2015. In addition, pursuant to KRS § 224.99-010(5), any person who violates a requirement of KRS, Title XVIII, Chapter 224, Subchapter 46-Hazardous Waste, shall be liable to the Commonwealth of Kentucky for a civil penalty in an amount not to exceed the sum of $25,000 for each day during which the violation continues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs the United States of America and the Commonwealth of Kentucky respectfully pray that this Court provide the following relief:

A. Order Defendant to perform appropriate injunctive relief to comply with RCRA, as amended by HSWA and corresponding Kentucky Statutes and Regulations;

B. Order Defendant to perform remedial measures to address hazardous constituents released as a result of Defendant's hazardous waste management practices at the facility.

C. Assess civil penalties against Defendant for up to the amounts provided pursuant to Section 3008(a) and (g) of RCRA, 42 U.S.C. § 6928(a) and (c), as updated for inflation; KRS § 224.99-010(5); and 28 U.S.C. § 2471, as amended by 31 U.S.C. § 3701.

D. Enter a judgment awarding Plaintiffs the costs of this action; and

E. Such further relief as this Court may deem appropriate.

DATED:   April 12, 2022                    CARLTON S. SHIER, IV
                                           United States Attorney
                                           Eastern District of Kentucky

                                           /s/ Christine Corndorf
                                           Christine Corndorf
                                           Assistant United States Attorney
                                           Eastern District of Kentucky
                                           260 W. Vine Street, Suite 300
                                           Lexington, KY 40507
                                           (859) 685-4848
                                           christine.corndorf@usdoj.gov


                                           TODD KIM
                                           Assistant Attorney General
                                           Environment and Natural Resources Division

                                           /s/ Steven O'Rourke
                                           Steven O'Rourke
                                           Environmental Enforcement Section
                                           U.S. Department of Justice
                                           Mail: P.O. Box 7611 Washington, D.C. 20044-7611
                                           Overnight: ENRD Mail Room, 150 M Street, N.E.
                                           Washington D.C. 20002
                                           Telephone: (202) 514-2779
                                           E-mail:   steve.o'rourke@usdoj.gov